**FILED**

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

NOV 1 8 2004

CLERK

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| PATRICIA JOHNSON | CASE NUMBER: _04-4186_ |
| Plaintiff, | |
| vs. | |
| | COMPLAINT |
| GATEWAY, INC. a corporation and, | |
| DAVID REZNICEK, an individual, | |
| Defendants. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

COMES NOW, the Plaintiff, Patricia Johnson, by and through her attorneys of record, and brings this action for damages and other legal and equitable relief from Defendants' violations of law, and for such other causes of action against the named Defendants as hereafter stated, and for her Complaint against the Defendants, GATEWAY INC., a corporation, and DAVID REZNICEK, an individual, hereby states and alleges as follows:

**JURISDICTION AND VENUE**

1.    This action arises under the laws of the United States, particularly under the Title VII, Civil Rights Act of 1964, 42 U.S.C.A. 2000e, including § 701 et seq., to redress the wrongs done to her by Defendants' subjecting Plaintiff to discrimination on the basis of gender, to 42 U.S.C.A. 2000e-3(a) to

1

redress retaliation, and under the provision of the Fair Labor Standards Act of 1938, 52 Stat. 1060; 29 U.S.C.A. § 201 et seq., as amended by the Equal Pay Act 77 Stat. 56; 29 U.S.C. § § 206(d) and 216(b), (written consent being filed with the Court simultaneously with the filing of this Complaint), and the Civil Rights Act of 1871, 42 U.S.C. § 1981.

2.  Jurisdiction over this action is conferred on this Court by 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over pendent state law claims alleged herein pursuant to 28 U.S.C. § 1367.

3.  On or about August 1, 2003, Plaintiff timely submitted a Charge of Discrimination against Defendant on the basis of discrimination due to gender, as well as unequal pay compared to male employees, to the South Dakota Division of Human Rights and the U.S. Equal Employment Opportunity Commission (Hereafter referred to as "EEOC").

4.  A Notice of Right to Sue was issued by the EEOC on August 26, 2004 and received by Plaintiff on August 30, 2004. A copy of this Notice is attached hereto as Exhibit "A" and incorporated herein by reference.

5.  Venue properly lies in the Southern Division of the District of South Dakota under 28 U.S.C. § 1391, as it is the district in which the claim arose and the acts alleged as a basis for federal claims took place within the boundaries of the District.

2

6.    Throughout this Complaint the terms "sex" and "gender" shall be used

interchangeably and identically and at all times the terms gender shall have

the same meaning as the term sex as set forth in the Titles and Acts

acknowledged and addressed herein.

## THE PARTIES

7.    Plaintiff, Patricia Johnson ("Johnson"') is a 40 year old, Caucasian woman

currently residing in Sioux Falls, South Dakota. At all times material,

Plaintiff was an employee of Defendant, Gateway, Inc., in Sioux Falls,

Minnehaha County, South Dakota, a member of a protected class and within

the jurisdictional coverage of Title VII of the Civil Rights Act.

8.    Defendant, Gateway, Inc., (hereafter "Gateway") is a Delaware corporation

in good standing authorized to do business and doing business in the state

of South Dakota, primarily engaged in the business of manufacture,

production and distribution of computers and related electronic parts and

devices. At all times pertinent, Defendant Gateway employed more than a

thousand employees at its Sioux Falls site, engaging with knowledge in

commerce intended for customers in other states, and at all times engaged in

commerce and in the production of goods for commerce within the meaning

of the above-stated Titles and Acts and within the jurisdictional coverage

of Title VII of the Civil Rights Act.

3

9.      Defendant, David Reznicek, (hereafter "Reznicek") was at all times

pertinent, an employee of Gateway. He served as the Interim Director and

Manager of Finance until March, 2001, when he was promoted to Director

of the Sioux Falls, South Dakota Gateway operation, a position in which he

remained at all times subsequent to March, 2001 which are material to this

action.. Unless otherwise designated, Defendant Gateway and Reznicek are

collectively referred to hereafter as "Defendants".

## GENERAL ALLEGATIONS

9.      Plaintiff, Patricia Johnson (hereafter "Patricia") was first employed with

Gateway on October 10, 1993, when she was hired as a Technical Support

Technician at the Sioux Falls plant.  In 1994, Patricia was promoted to

Quality Assurance Technician, and later in 1994 was again promoted, this

time to Quality Assurance Supervisor.  Patricia was again promoted and

from 1994-1995  was a Section Supervisor. In 1995-1996 she was made the

National Service and Support Manager in the Australia Division, Sydney,

Australia. During 1996-1997 Plaintiff was the Asia/Pacific Regional

Service and Support Manager, Kuala Lumpur, Malaysia, and upon her

return requested that she be sent back to Sioux Falls.

10.     During 1997-1999 Patricia was the Client Care Call Center Manager in

Sioux Falls, South Dakota, and when the Sioux Falls Director resigned in

4

1998, had responsibility for managing 400+ inbound technical support representatives and managers and 5 staff managers. During her tenure, the Sioux Falls operation was ranked number one for Gateway's Consumer Division in cost per solution, client satisfaction and client first time resolution.

11.    In 1999-April 2001, Plaintiff was promoted to the Six Sigma Black Belt program and assist in cost saving activities Gateway-wide, and process improvements and process design.

12.    In April of 2001, Patricia was chosen to be Senior Manager, Manufacturing Quality, Sioux Falls, South Dakota. She served in this capacity until March 17, 2003. Patricia was directed to report to a Director based in the Poway, California office, one Dallas Quaresma. Defendant Reznicek made clear to Patricia that he was unhappy about the reporting set-up. He told Patricia "[i]f you have anything to do with process improvement and quality that you should report to me directly.  These have to do with reporting on my performance and affect my paycheck."

13.    Patricia discussed her concern that there were no women in Senior Management in the Sioux Falls Manufacturing site.  She was told by Dallas Quaresma that by her being there it gave the appearance to the non-exempt staff that there was a powerful woman in place and that this "would help

5

manage the issues on the table." Patricia was not advised what those issues were. Patricia knew the former Director had been fired but was unaware of the reason. On April 15, 2001, Patricia officially took the title of Senior Manager-Quality Assurance/Manufacturing.

14.   Throughout her career, Patricia had been a very successful and hard-working employee. From May 2002 through August 2002, she was asked to retain her Sioux Falls responsibilities and take on the additional responsibility of managing the Hampton, VA Quality Assurance program, which involved several week-long trips to Virginia as well as 12-14 hour days to keep up on both jobs. In October of 2002 Patricia received a Silver Spotlight Award for her work as well as a high ranking on her performance review.

15.   Despite all this, the working conditions were worsening for Patricia. From the beginning of the time she started in Sioux Falls, on April 15, 2001, she was treated differently than her male counterparts and contemporaries. She was paid less, she was not given the same opportunities or respect, and the interference with her job duties steadily increased.

16.   The acts and comments of Defendant Reznicek created and perpetuated the hostile environment and encouraged others to join in the behaviors toward Patricia.

6

17.   Despite her requests for equal and fair treatment, the situation did not improve. On February 6, 2003, Patricia made a complaint of gender discrimination to Gateway, Inc.'s Human Resources Department.

18.   On or about March 17, 2003, Johnson was terminated.

19.   That Plaintiff filed a Charge of Discrimination on August 1, 2003.

20.   A Notice of Right to Sue was issued by the EEOC on August 26, 2004 and received by Plaintiff on August 30, 2004.

## COUNT I

## DISCRIMINATION PURSUANT TO 42 USC § 2000e TITLE VII

## SEX/GENDER DISCRIMINATION

21.   Plaintiff incorporates by reference the allegations set for in paragraphs 1 through 20 as if specifically set forth herein.

22.   Plaintiff and Defendants herein named are employee and employer respectively for purposes of the definition set forth in 42 U.S.C § 2000e, *et. seq.*

23.   42 U.S.C. §2000e (a) (1) provides that it is unlawful for an employer " ...to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's...sex..."

24.   Defendant's conduct by and through its agents substantially interfered with

7

Plaintiff's employment and created an intimidating, hostile, and offensive

work environment. This environment was created by conduct that was in

direct violation of 42 U.S.C. § 2000e, *et. seq.* Defendant knew or should

have known of the existence of the harassment and failed to take timely and

appropriate action.

25.    The unlawful employment practices complained of above were intentional,

and were done with malice or reckless indifference to the federally

protected rights of Plaintiff.

26.    Defendant's discriminatory working conditions culminated in Plaintiff's

termination by Employer.

27.    The discriminatory working conditions and disparate treatment Plaintiff

received included but was not limited to the following:

A.     Within the greater Gateway organization, the management of

Sioux Falls was referred to as the "Sioux Falls Boys Club". It

was acknowledged that it would be difficult for Plaintiff as a

woman to operate there.

B.     Plaintiff was openly ridiculed in staff meeting in front of her

peers. Plaintiff's area of responsibility was quality control.

Defendant Reznicek would say things like "if you could call it

a quality program at all" and "the quality programs are a joke

8

and so is the manager". He would say to Plaintiff in front of the other managers "you don't know the first damn thing and you never will."

C.     Reznicek's staff began aping his behavior by refusing to interact with Plaintiff and by not answering the phone when Plaintiff called Reznicek.  The staff would act belligerently toward her at staff meetings regarding the quality programs.

D.     Plaintiff told the person in California to whom she reported of the difficulties she was having.  At least monthly for 1 ½ years Plaintiff told her manager that she was having trouble being effective because of the resistance to any of her programs or ideas. She advised them that she believed the resistance was because she was a woman and she and her programs were being halted by Reznicek and his staff. Plaintiff advised her manager that Reznicek's treatment of her was very different from the way he treated his staff of 5 men.

E.     When Plaintiff joined the management staff in Sioux Falls at the Manager-3 level which was senior management, there was one other woman in management, though she was at a lower lever as a Manager-2 . Reznicek frequently socialized with all

9

of his direct reports (male) and often took his team to an "appointment with Dr. Green" which meant playing golf. Neither Plaintiff nor the other female employee were ever invited but were expected to stay and work while the male employees took work time off to play golf. Plaintiff was a Manager 3. Reznicek would conduct tours for visitors to CHS and included all other Manager 3s in these events. However, in the two years Plaintiff was there, she was never invited to join in even once.

F.   Reznicek would regularly demean Plaintiff's work in front of others. For example, he would have all of his other (male) managers make presentations to the entire staff at "town hall" meetings. However, after the April 2001 meeting Plaintiff was reprimanded for showing up his staff with the quality of her presentation and told it was her job to bring out others and help them with their skills, not to show them up. She was never invited to make a presentation again after this meeting.

G.   If there were national meetings for Quality Managers, instead of sending Plaintiff because that was her job, Reznicek would send a man despite his lack of knowledge about the area.

Reznicek said that he was more comfortable with that.

H.   In the two years that Plaintiff worked with Reznicek he never

reprimanded her peers in front of the peer group.  However,

he frequently reprimanded her and belittled her in front of the

group. He so demeaned Plaintiff that two other employees

stopped by her office to say they couldn't believe Reznicek's

behavior.

I.   In January of 2003, Plaintiff approached Reznicek about

taking on additional responsibilities of Training and

Continuous Improvement, as had been discussed when she

came in 2001. Plaintiff had much prior training and

experience in these areas. Reznicek responded that "I have my

own staff to manage this - I think you'll be staying out of it.

Instead he retained a male employee who had no previous

experience or education in either Training or Continuous

Improvement.

J.   On February 4, 2003 at a staff meeting, Plaintiff brought up

quality violations that were occurring on the floor and

suggested that as managers they should all take closer looks.

A lower level manager than Plaintiff blew up and made

11

several off color remarks under his breath. Reznicek neither

commented nor reprimanded him. When Plaintiff went to talk

to the offender to work out the issue, he screamed at her,

shaking his finger and told her he wouldn't talk about it and

to get the hell out of his office. Plaintiff went the next day to

discuss the behaviors with Reznicek who told her not to bring

up controversial things in staff meetings. Plaintiff contacted

HR and made a complaint against Reznicek on February 6,

2003.

28.     The discrimination escalated until it culminated in a series of events which

ended in Plaintiff's termination:

A.      February 4, 2003: David Reznicek tells his direct reports in

staff meeting that there will be no cut-backs in Sioux Falls

during the May lay-offs.  He indicated that Sioux Falls cut

backs would be more gradual over time from June through

August.

B.      February 6, 2003: Plaintiff makes gender discrimination

complaint to Human Resources.

C.      February 6, 2003: Plaintiff sends confidential e-mail to her

boss (Dallas) outlining the complaint discussion with Human

12

Resources.

D.      February 13, 2003: Plaintiff speaks with her boss, Dallas, via

        phone about fear over her job being terminated by David

        because of what she had reported to HR.

E.      February 19, 2003: The reporting structure of Plaintiff's

        Quality Assurance staff was changed. Instead of reporting to

        Quality Assurance the staff of 40 people and Plaintiff were

        directed to report to Customer Service.

F.      February 27, 2003: David Reznicek informs Plaintiff that

        there are specific instructions from Poway (Gateway

        headquarters) to cut 12 people out of the Quality Assurance

        organization in Sioux Falls, and that this is the only

        organization affected by the cut.

G.      February 28, 2003: Plaintiff speaks with the Vice President of

        Quality (hereafter "VP") to inquire as to why she had been

        moved under Customer Service and why the severe cuts.  The

        VP was unaware of the cuts and indicated that he was told

        about the move but that he didn't understand it either. He said

        he would check on it.

H.      March 11, 2003: Reznicek tells Plaintiff that she will not be

involved in the termination of any of her staff even though it
is her responsibility. He further states that he would prefer
her Supervisors, junior members of her department to handle
it. Terminations were scheduled to begin the following
morning and Reznicek was aware that it was Plaintiff's
responsibility and that she had already prepared a termination
list.

I.      March 12, 2003-Reznicek called Plaintiff at 8:12 a.m. to
inform her that the termination were being postponed because
Gateway had gone over on the number allowed before
initializing the Warn Act. He asked Plaintiff if she would
consider terminating fewer people in her organization in
Hampton, VA. He indicated that the terminations would take
place once Gateway was sure that they would not invoke the
Warn Act cause additional costs to Gateway for this layoff.

J.      March 14, 2003: At an afternoon meeting, Plaintiff's staff is
informed by Reznicek in private (without Plaintiff being
present) that the department to which they would report would
again be changed. The staff was directed to once again report
to Quality Assurance. This was to be effective that Monday,

14

March 14, 2003, once Plaintiff was informed that she was terminated.

K.  March 17, 2003: Plaintiff is told she is terminated from Gateway. She is told "Your job has been eliminated and we have been unable to find any alternatives for you"

L.  March 17, 2003: Plaintiff's staff is assigned to report directly to the Plaintiff's replacement, the new director of Quality Assurance, a male, who previously had no staff reporting directly to him because of an "inability to manage people".

29.  The above actions on the part of Defendants created a harassing and hostile work environment for Plaintiff that was so severe and pervasive as to alter the terms and conditions of Plaintiff's employment.

30.  Gateway, Inc., failed in it duty to maintain a productive, safe working environment for Plaintiff, failed to exercise reasonable care to prevent a discriminatory and hostile work environment in not enforcing workplace policies addressing gender discrimination.

31.  As a direct and proximate result of the discrimination and hostile work environment the Plaintiff suffered, Plaintiff has been damaged in an amount to be determined by the jury.

32.  Additionally, the acts undertaken by Gateway, Inc., were done with willful

and callous disregard to the interest of Plaintiff, entitling the Plaintiff to an award of exemplary damages against them.

## COUNT II

## RETALIATION

33.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 32 and all parts thereof as if specifically set forth herein.

34.  Plaintiff's firing was in retaliation for her opposing discrimination on the basis of her gender by her act of filing a complaint against Employer Defendants and such action was taken in violation of 42 U.S.C. § 2000e 3 (a) which states that it shall be an "unlawful employment practice for an employer to discriminated against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect Plaintiff's status as an employee because of her exercise of a federally-protected right to oppose practices that she reasonably believed constituted violations of Title VII, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

16

35.   The unlawful employment practices complained of above were intentional.

36.   The unlawful employment practices complained of above were done with
      malice or with reckless indifference to the federally protected rights of the
      Plaintiff.

37.   Defendants acts as alleged herein constitute discrimination and Defendants'
      discriminatory acts have caused Plaintiff to lose her employment and have
      resulted in lost wages and employment-related benefits in an amount to be
      determined at the time of trial, together with prejudgment interest thereon
      from the date due until paid in full.

38.   Plaintiff is entitled to front pay for the damages and loss of career she will
      have in the future.

39.   Defendants' discriminatory acts have also caused Plaintiff to suffer damage
      to her reputation, extreme emotional distress, humiliation, anxiety and
      depression in an amount to be determined at trial.

40.   Plaintiff has been required to retain attorneys to prosecute this action and
      Plaintiff is entitled to recover her attorney fees and reasonable costs
      incurred herein pursuant to 42 U.S.C.A. §1988 and FRCP 54(d).

41.   Defendants' conduct was malicious and in total disregard of the rights of
      Plaintiff and is highly repugnant to the interest of society.  Punitive
      damages in an amount to be determined by the jury should be awarded to

17

punish Defendants and to deter and discourage Defendants and others from acting in a similar fashion.

## COUNT III

## EQUAL PAY ACT

42. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 41 and all parts thereof as if specifically set forth herein.

43. Defendants, employer of Plaintiff herein, who are employees subject to the provisions of the Equal Pay Act, has, during the period since November 20, 2001, repeatedly and willfully violated, and it is willfully violating the Act by discriminating between employees on the basis of sex by paying the plaintiff at rates less than the rates at which it pays male employees in the same establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.

44. A judgment granting damages in the amount of the difference between the wages paid to male employees for equal work within the meaning of the Equal Pay Act together with an additional equal amount as liquidated damages is specifically authorized by Section 216(b) and Section 6(d)(3) of the Act.

## COUNT IV

18

## SOUTH DAKOTA HUMAN RELATIONS ACT

45.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 44 and all parts thereof as if specifically set forth herein.

46.  The Defendant's conduct as articulated above constitutes discrimination in violation of SDCL § 20-13-10.

47.  Said discrimination was based on gender. Defendants also engaged in retaliation when Plaintiff attempted to exercise her protected rights.

48.  Specifically, Plaintiff was made to endure a discriminatory and hostile working environment that was so severe and pervasive as to alter the terms and conditions of Plaintiff's employment.

49.  The Defendants failed to maintain a work environment free from gender discrimination.

50.  As a direct and proximate result of the discrimination and hostile work environment, Plaintiff has been damaged in an amount to be determined by the jury.

51.  Additionally, the acts undertaken by Defendants were done with willful and callous disregard to the interest of Plaintiff, entitling Plaintiff to an award of exemplary damages against them.

### COUNT V.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

52.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 51 and all the parts thereof as if specifically set forth herein.

53.   Defendants allowed a discriminatory and hostile work environment to take place, and their failure to actively promote, establish and maintain a work environment that is respectful of diversity constitutes extreme and outrageous conduct.  Similarly, Defendants' acts constituted extreme and outrageous conduct.

54.   By their acts and omissions, Defendants intended to cause Plaintiff severe emotional distress.

55.   As a direct and proximate cause of Defendant's extreme and outrageous conduct, Plaintiff has suffered an extreme disabling emotional response.

56.   As a further direct and proximate result of Defendant's intentional infliction of emotional distress upon Plaintiff, Plaintiff has been damaged in an amount to be determined by the jury.

57.   The acts undertaken by Defendants were done with willful and callous disregard to the interests of the Plaintiff, entitling Plaintiff to an award with exemplary damages against Defendants.

58.   Defendant had a duty to refrain from humiliating, abusive, assaultive and degrading behavior towards Plaintiff.

59.   Defendants knew or should have known the emotional distress was certain

or substantially certain to result from its misconduct.

60.    The actions of the Defendants constitute outrageous conduct beyond the

bounds of decency and intolerable in civilized society.

61.    The extreme and outrageous nature of the conduct arises from the abuse by

Defendants of their relationship and position which gave the Defendants the

actual or apparent power to damage Plaintiff's interest.

62.    As a direct and proximate result of Defendant's outrageous conduct,

Plaintiff has suffered and continues to suffer mental anguish, pain and

suffering, humiliation, embarrassment, emotional distress and other

damages in an amount to be determined at trial.

## COUNT VI.

## BREACH OF CONTRACT

63.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1

through 62 and all the parts thereof as if specifically set forth herein.

64.    That the Defendant's online policies and procedures guide, also know as the

Gateway Handbook and also known as Policy and Procedure Manual

contained policies prohibiting discrimination on the basis of gender,

policies prohibiting retaliation against employees for exercising their civil

rights.

65.    Defendants engaged in a course of conduct that violated the rules,

regulations and disciplinary procedures in employer's employee handbook.

and non-retaliation policies thereby breaching the employment contract with

Plaintiff.

66.     At all times material hereto, the employees involved in the discrimination

and knowledge of the discrimination of Plaintiff were agents of Gateway,

Inc.  The wrongful actions and omissions of Gateway, Inc.'s agents and

employees as described herein were at all times related to their duties and

responsibilities as agents of Gateway, Inc and/or accomplished by virtue of

the authority granted to them by Gateway, Inc., and therefore, Gateway,

Inc., is liable for the wrongful conduct of its agents and employees under

the law of vicarious liability.

## VII.

## RESERVE FOR PUNITIVE DAMAGES

67.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1

through 66 and all parts thereof as if specifically set forth herein.

68.     Based on the foregoing allegations, Defendant's conduct showed a

disregard for Plaintiff's rights because Defendant acted willfully or

wantonly to the injury of Plaintiff and is therefore liable to Plaintiff for

punitive damages.

## VIII.

22

## DEMAND FOR JURY TRIAL

69. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

hereby requests trial by jury of the issues of fact in this action.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1. That pursuant to Rule 38(b) of the Federal Rules of Civil Procedure,

Plaintiff hereby requests trial by jury of the issues of this action; and

2. For compensatory damages in such amount as the evidence at trial may

show; and

3. For damages, including by not limited to, those damages allowed by 42

U.S.C. § 2000e et seq, and any other pertinent and applicable statute, rule,

or regulation whether state or federal; and

4. For an Order awarding Plaintiff back pay and front pay; and

5. That the Court enter judgment in favor of Plaintiff on Plaintiff's claim

arising under the South Dakota Human Relations Act; and

6.  That the Court enter judgment in favor of Plaintiff on Plaintiff's claim

arising under the Equal Pay Act, and Defendants be ordered to pay the

Plaintiff an amount equal to the difference between the wages actually

received and the wages paid to male employees performing equal work and

interest thereon together with an additional equal amount as liquidated

damages;

7.    That the Court order the Defendants to pay Plaintiff's costs in the action;

8.    That the Court order the Defendants to pay Plaintiff's reasonable attorney's fees;

9.    That the Court enter judgment in favor of the Plaintiff on Plaintiff's claims of violation of the South Dakota Human Relations Act, Intentional Infliction of Emotional Distress and Breach of Contract; and

10.    For punitive damages in an amount determined at trial; and

11.    For costs and disbursements incurred herein, including prejudgment interest and reasonable attorney fees; and

12.    For such other and further relief as the Court deems just in the premises.

Dated at Sioux Falls, South Dakota this _____ day of November, 2004.

PIERSOL LAW FIRM

Catherine V. Piersol
Attorney for Plaintiff
515 S. Cliff Avenue, Suite 200
Sioux Falls, SD 57104
(605) 339-0909

24