UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA JOHNSON, | ) | CIV. 04-4186-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING IN |
| vs. | ) | PART AND DENYING IN |
| | ) | PART MOTION FOR |
| GATEWAY, INC., a corporation, and | ) | SUMMARY JUDGMENT |
| DAVID REZNICEK, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants, Gateway, Inc. and David Reznicek, move the court for summary judgment on the claims asserted against them by plaintiff, Patricia Johnson. Johnson opposes the motion. The motion is granted in part and denied in part.

## FACTUAL BACKGROUND

Johnson began working at Gateway, a multinational computer and electronics company, in the fall of 1993. SUMF 1, Patricia Johnson Depo. at 6. During her tenure at Gateway, Johnson worked in a variety of capacities, both in the United States and abroad. P.J. Depo. at 25-28. Gateway's operations included a facility in Sioux Falls, South Dakota, which contained a customer hardware support (CHS) division. SUMF 2. The CHS division was responsible for providing support for customers who had problems with Gateway hardware, including receiving, testing, and repairing physical components returned by Gateway customers. SUMF 2.

Beginning in the fall of 2000 and throughout all times relevant to this action, David Reznicek was the director of the CHS division at the Sioux Falls facility.  SUMF 3.  During the beginning of Reznicek's tenure, changes began to occur in the quality assurance department of the CHS division. Reznicek spoke with Johnson in November of 2000 regarding the position of quality assurance manager, and he interviewed her for that position.  David Reznicek Depo. at 90-102.  Reznicek testified that although he recommended Johnson for the position as the quality assurance manager, someone else ultimately made the decision to hire her for the position.  D.R. Depo. at  95-96, 100-101.  As quality assurance manager, Johnson hired employees from within the CHS division to fill her department.  Although Johnson and all the employees she supervised were based in Sioux Falls, she was directly supervised by Reznicek's counterpart in California, Dallas Quaresma.

The quality assurance department was responsible for identifying areas in which the CHS division was not performing properly, as well as determining and implementing new procedures for testing products for defects.  SUMF 5, 6.  Gateway asserts that Johnson's position as a quality assurance manager created a natural business conflict between herself and the other CHS managers, because when she identified a CHS area as under performing it reflected poorly on the manager of that area.  SUMF 5.  In her deposition, Johnson testified as follows:

2

Q       [Counsel for Defendant] : Would you agree there's some
        just natural tension between what your job was and what
        [ CHS manager] Don Koenigs's was?

A:      [Johnson] What Don Koenigs's job was?

Q:      Yes.

A:      I would and have always seen quality auditing as a help,
        so that an area can improve and continue to provide very
        exemplary service.  So I've always viewed quality
        assurance as a tool, a resource, a help.  I know that some
        of the other managers felt that way, too.

Q:      I can appreciate that from your standpoint.  Can you also
        understand that a manager, such as Don Koenigs, would
        not look at your program the same way, and would
        actually see it as a criticism of his department and a
        reflection of his performance?

A:      [Reznicek] indicated that to me when I started, so I can
        see that Don would think that, too.

Q:      Did other managers within the Sioux Falls operation feel
        that same way?

A:      I can tell you that Chuck Limoges, Brent Ewoldt, Sandy
        Schubert did not feel that way, and those were the other
        managers in that area.  Jeff Dirkson, Don Koenigs and
        [Reznicek] certainly verbalized and expressed that, yes.

Q:      They saw it as a threat.

A:      Yes.

P.J. Depo. at 91-92.

        Prior to beginning her work as a manager at the Sioux Falls branch of

Gateway, Johnson asserts that she was warned by Gateway Human

Resources Manager Julie Laufenberg that she may have difficulty in Sioux

3

Falls because of the "good old boys' club atmosphere." Julie Laufenberg Depo. at 37-38. Subsequent to her assuming the role as quality assurance manager, Johnson discussed with Laufenberg her concern that the existence of the "good old boys' club" affected her work. Id. Johnson asserted that the "good old boys' club" atmosphere inhibited her ability to implement quality assurance measures. Dallas Quaresma Depo. at 48.

Johnson testified that she suffered other hardships as a Gateway employee. Johnson asserts that she and another female manager, Sandy Schubert, were not invited to participate in after work social activities, nor were they invited to participate in golf outings, at least three of which occurred during the work day. SDMF 9. Johnson also asserts that her co-managers ignored her, laughed about her in the halls, and deliberately moved when she sat next to them. SDMF 12. Finally, Johnson asserts that she was deprived of important work opportunities: that Reznicek regularly canceled scheduled "one-on-one" meetings, that she was not included on tours given to corporate executives visiting the facility, and that she was only allowed to present at one "employee rally" and afterward was criticized for her presentation style. Docket 46 at 5. Although Johnson admits that this behavior was never predicated with an indication that it was based upon her gender, she asserts "the circumstantial evidence strongly suggests" that this behavior all occurred because she was a woman. SDMF 15.

4

Johnson asserts that events which occurred on February 6, 2003, caused her to go forward and file a harassment claim.  On that day, Johnson had a particularly contentious meeting with Don Koenigs in response to his criticism of a warning she had given to an employee in his department.  SUMF 8.  Johnson asserts that Koenigs swore at her and told her to leave his office before Koenigs did something he would regret.  P.J. Depo. at 96.  After this meeting, Johnson went to the director of Human Resources and complained about what she alleged to be a "two year persistent pattern of discrimination, disparate behavior, and hostility."  Docket 46 at 7.  At the meeting, Johnson asserts that she discussed the incident that occurred between her and Koenigs, and that Reznicek did nothing in response to the situation.  P.J. Depo. at 98.  According to Johnson, when she mentioned that the behavior occurred because she was a woman, Human Relations generalist Keith Viggers told her that she "didn't want to go there."  P.J. Depo. at 100.  Johnson also asserts that she immediately informed Quaresma that she had filed a complaint.

Johnson's complaint triggered an investigation by Viggers.  Bryan Plowman Depo. at 18-20.  Viggers recommended that Koenigs receive some sort of documented discipline and that it be placed in his file.  Id.  On or about February 7, 2003, Reznicek was made aware that Johnson had filed a complaint regarding an incident between Johnson and Koenigs.  D.R. Depo. at 243.  Reznicek asserts that he was unaware that he was named in

Johnson's complaint.  D.R. Depo. at 76.  Reznicek testified that he was unaware of Koenigs ever receiving a disciplinary notation in his file.  D.R. Depo. at 242.

Johnson asserts that the claim she filed on February 6, 2003, set off a chain reaction that ultimately ended in her termination.  On February 13, 2003, Johnson was informed that she would no longer be reporting to Quaresma in California, but rather would be reporting to Reznicek in Sioux Falls.  SUMF 17.

On February 27, 2003, Reznicek asserts that he received word from Gateway corporate that he was to eliminate twelve persons from the quality assurance department.  SUMF 18.  Johnson assisted Reznicek in preparing a list of those who were to lose their jobs.  Id.  On March 17, 2003, Reznicek informed Johnson that she was terminated.  D.R. Depo. at 309.  Gateway asserts that Reznicek made a business decision to consolidate the position held by Johnson with the position held by Gateway manager John Landin. SUMF 19.  Reznicek asserts that he saw the future of Gateway to be dealing with more third-party vendors and because he believed Landin's degree in engineering would be helpful in communicating with these vendors, he selected Landin over Johnson.  Employee Selection Document, Docket 31, Att. 8, D.R. Depo. at 136-39.  Johnson asserts that her position was not consolidated with Landin's, rather she was simply replaced, and the

6

consolidation was an after-the-fact justification created by Gateway.  SDMF 19, Docket 46 at 11.

Johnson claims that she was forced to endure a hostile work environment, and she was discriminated against because of her gender when Landin was selected for her position.  Johnson also claims that she was retaliated against for making a complaint of discrimination to the Human Resources Department of Gateway.  Johnson asserts parallel state-law gender discrimination claims.  In addition, Johnson asserts that she received compensation less than males at the same management level in violation of the Equal Pay Act, that Reznicek and Gateway intentionally inflicted her with emotional distress, and that Gateway breached its contract with her when she was dismissed.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is not appropriate if a

7

dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that genuine issue exists.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

## DISCUSSION

### I.    Title VII Claims

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against employees with respect to their compensation, terms, conditions, or privileges of employment, because of race, color, religion, sex, or national origin.  See 42 U.S.C. § 2000e-2(a)(1).  An employer is also prohibited from retaliating against an employee because the employee "opposed any practice made an unlawful employment practice by" the provisions of Title VII.  42 U.S.C. § 2000e-3(a).

Johnson's Title VII claims are evaluated under the framework enunciated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Erenberg v. Methodist Hosp., 357 F.3d 787, 792 (8th Cir. 2004).[1] Under the burden-shifting framework set forth in McDonnell Douglas, in order to survive summary judgment the "plaintiff must first demonstrate a prima facie case of discrimination." Erenberg, 357 F.3d at 792. If this initial burden is met by the plaintiff, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its employment decision." Id. Finally, if this burden is met by the employer "the burden shifts back [to] the plaintiff to show the employer's stated reason was a mere pretext for discrimination." Id. Despite the burden-shifting nature of the McDonnell Douglas framework, the ultimate burden remains with the plaintiff to prove unlawful discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

---

[1]The Eighth Circuit has held that when there is direct evidence of discriminatory behavior, that is, evidence "showing a specific link between the alleged discriminatory animus and the challenged decision," then the McDonnell Douglas burden-shifting analysis is not necessary. Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004). In this instance, Johnson has not made such a showing. In response to Defendant's Statement of Material facts, Johnson "concedes that no one ever qualified their derogatory statements and refusal to work with Ms. Johnson in a professional manner with 'because you're a woman.' " SDMF 15. Rather, Johnson asserts that "circumstantial evidence strongly suggests" that any harassment she suffered was based upon her gender. SDMF 15. Therefore, under Griffith, the court will analyze Johnson's claims under the McDonnell Douglas burden-shifting analysis.

### A.    Reznicek's Individual Liability

Reznicek argues that he is not an "employer" as defined by Title VII and therefore cannot be subject to individual liability.  For purposes of Title VII, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ."  42 U.S.C. § 2000e(b).

The Eighth Circuit has never explicitly addressed whether an individual can be subject to liability under Title VII.  But in Lenhardt v. Basic Institute of Technology, Inc., 55 F.3d 377 (8th Cir. 1995), the Eighth Circuit was faced with an analogous question of whether an individual could be subject to liability under the Missouri Human Rights Act (MHRA).  The court first determined that it was appropriate to construe "employer" under the MHRA in a manner consistent with its construction under Title VII.  Lenhardt, 55 F.3d at 380.  After surveying sister circuits, the court in Lenhardt found:

> The consensus of these courts is that Title VII actions brought against individual employees are against those employees in their "official" capacities, and that liability can be imposed only upon the common employer of the plaintiff and of the individual fellow employees who are named as defendants.  Under this view, the language "any agent of such a person" is designed to incorporate the principles of respondeat superior into Title VII rather than to expose either supervisors or co-workers to personal liability in employment discrimination cases.

Id. at 380.

10

In this case, although Reznicek was above Johnson in the Gateway hierarchy, he was still a Gateway employee.  Reznicek did not employ Johnson, or any other persons he supervised in his individual capacity. Although <u>Lenhardt</u> did not explicitly address Title VII liability for managers and supervisors in an individual capacity, there is nothing to indicate that the Eighth Circuit would treat a Title VII case differently.  <u>See Waag v. Thomas Pontiac, Buick, GMC, Inc.</u>, 930 F. Supp. 393, 407 (D. Minn. 1996). Additionally, in her response brief, Johnson concedes that it is "widely held that a supervisor is not personally liable under Title VII."  Docket 46 at 22. Accordingly, with respect to Johnson's Title VII claim against Reznicek in his individual capacity, defendants' motion for summary judgment is granted.

**B.    Gateway**

**1.    Hostile Work Environment Sexual Harassment**

The Supreme Court has held that Title VII is violated when an employee is subjected to a hostile work environment.  <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).  There are four elements that must be established for Johnson to make a prima facie showing of hostile work environment sexual harassment by a supervisor. <u>Turner v. Gonzales</u>, 421 F.3d 688, 695 (8th Cir. 2005).  Johnson must show (1) she was a member of a protected group, (2) she was subjected to unwelcome harassment, (3) there was a causal nexus between the

11

harassment and her membership in the protected group, and (4) the harassment affected a term, condition, or privilege of her employment.  Id.

For purposes of this summary judgment motion, the first two elements are not contested.  In its motion for summary judgment, Gateway argues that Johnson has not shown that any harassment she received was the result of her gender.  Gateway also argues that even if all of Johnson's claims are assumed to be true, the harassment does not rise to the level of a colorable hostile work environment claim.

The court finds that even if Johnson were able to prove that the harassment she alleges she suffered was a result of her gender, that the harassment did not rise to a level sufficient to fulfill the fourth element of a hostile work environment sexual harassment claim.  In order for harassment to affect a term, condition, or privilege of employment, the harassment "must be both subjectively offensive to the employee and objectively offensive such that a reasonable person would consider it to be hostile or abusive."  Williams v. Missouri Dep't of Mental Health, 407 F.3d 972, 975 (8th Cir. 2005) (internal citations omitted).  The court in Scusa v. Nestle U.S.A. Co., Inc., 181 F.3d 958, (8th Cir. 1999), noted a number of factors a court should consider in determining whether this factor had been met, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

12

utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 967 (citing Harris 510 U.S. at 23.).

In this case, Johnson points to what she characterizes as a pattern of harassment behavior: that she was "ignored, belittled, laughed at, and physically shunned by other members of the management team." Johnson asserts that she was excluded from social outings during and after work hours. Johnson further asserts that Reznicek canceled meetings with her, that she wasn't allowed to join in giving tours, and that she was only allowed to present at one employee rally. Johnson also argues that she encountered resistance when she attempted to implement quality assurance measures she had devised.

Assuming all of Johnson's allegations to be true, the court does not find that her work conditions rose to a level that a "reasonable person would consider it to be hostile and abusive." Williams, 407 F.3d at 975. With regard to the alleged inappropriate behavior, "[t]he Supreme Court . . . has made it abundantly clear that the standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' " Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1038 (8th Cir. 2005) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 778, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)). See also TEK Indus., 406 F.3d at 1039 ("[S]imple teasing, offhand comments, and isolated incidents (unless

13

extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (internal citations omitted).  Further, it seems clear that the alleged behavior had a minimal effect on Johnson's work performance.  By her own assertion, Johnson continued to capably perform her work up until the date of her dismissal.  The court finds that the behavior alleged by Johnson is insufficient to make a prima facie showing that her workplace was "permeated with discriminatory intimidation, ridicule, and insult."  Duncan v. General Motors Corp., 300 F.3d 928, 934 (8th Cir. 2002) (quoting Harris, 510 U.S. at 17).

Because Johnson has failed to make a prima facie case of hostile work environment sexual harassment, Gateway's motion for summary judgment with respect to that claim is granted.

### 2.    Gender Discrimination

Johnson also asserts a claim for gender discrimination under Title VII.  In order to prove a prima facie claim of discrimination, Johnson must show that:  (1) she belonged to a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated males.  Turner v. Gonzalez, 421 F.3d 688, 694 (8th Cir. 2005).  The fourth element "also can be met if the employee provides some other evidence that would give rise to an inference of unlawful discrimination."  Id. (internal citation omitted).

14

Johnson alleges that she was discriminated against when Reznicek made the decision to replace her with Landin as manager of the quality assurance department.  Under the burden-shifting analysis of <u>McDonnell Douglas</u>, Johnson must first make a prima facie showing of these four elements.  For purposes of this summary judgment motion, Johnson has made a prima facie showing of all four elements.

 Johnson, by her status as a woman, was a member of a protected class.   There is no evidence in the record to indicate that Johnson was ever incapable of conducting her job as a quality assurance manager.  Johnson was terminated as an employee, and therefore she suffered an adverse employment action.  Finally, Johnson has made a prima facie showing that she was treated differently from the similarly situated male manager John Landin, in that he was selected to go forward as the quality assurance manager and she was dismissed.  <u>See</u> <u>Allen v. City of Pocahontas, Ark.</u>, 340 F.3d 551, 558 (8th Cir. 2003).

After the prima facie showing has been made, the burden shifts to Gateway to set forth a legitimate non-discriminatory reason for its employment decisions.  Gateway asserts that financial considerations forced it to cut positions.  Reznicek also asserts that because of Gateway's business plan to begin to sell products primarily produced by third-party vendors, there would be a greater need to have a person with an engineering

background in the quality assurance manager position to communicate with the vendors.  D.R. Depo. at 138.  The Eighth Circuit has held that "employers have wide latitude to make business decisions" and that an employer may "discharge-for good reason, bad reason, or no reason at all, absent intentional . . . discrimination." McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507 (8th Cir. 1995).

Considering the general trend in Gateway's business, Reznicek's decision to reevaluate the company's needs for the quality assurance manager position is a reasonable business judgment.  Gateway's proffered explanation of Reznicek's selection of Landin is also reasonable.  Gateway has therefore shifted the burden back to Johnson to show pretext.

Johnson argues that Gateway's proffered explanation, that Landin was more qualified to go forward as the quality assurance manager, is simply pretext for Reznicek firing Johnson because of her gender.  She asserts that Landin had previously been removed from the quality assurance manager position for performance problems.  Docket 46 at 9.  But there is no evidence in the record to indicate that Landin's transfer out of a supervisory position and into another management position was involuntary or based upon performance.  Rather, Landin testified that he voluntarily changed positions because he anticipated needing to take an extended leave on short notice for medical purposes and because he was

16

having difficulty with his supervisor.  Landin Depo. at 118-120.  Reznicek
confirmed Landin's explanation in his testimony and stated that he was
unaware that Landin had any performance issues as a manager.  D.R.
Depo. at 34-36.

The Eighth Circuit has held that where "the employer contends that
the selected candidate was more qualified for the position than the plaintiff,
a comparative analysis of the qualifications is relevant to determine whether
there is reason to disbelieve the employer's proffered reason for its
employment decision."  Chock v. Northwest Airlines, Inc., 113 F.3d 861, 864
(8th Cir. 1997).  "[F]ederal courts do not sit as a super-personnel department
that reexamine[s] an entity's business decisions . . . Rather, our inquiry is
limited to whether the employer gave an honest explanation of its behavior."
Krenik v. County of Le Sueur, 47 F.3d 953, 960 (8th Cir. 1995).

There is no definite standard for determining the level of disparity of
qualifications that must be shown to successfully demonstrate pretext.  See
Ash v. Tyson Foods, Inc., 546 U.S. 454, 126 S. Ct. 1195, 163 L. Ed. 2d 1053
(2006) (per curiam) (declining to "define more precisely what standard
should govern pretext claims based on superior qualifications").  The Eighth
Circuit has stated that "[a] comparison that reveals that the plaintiff's
qualifications were similar to those of the selected candidate does not raise
an inference of gender discrimination."  Woods v. Perry, 375 F.3d 671, 676

17

(8th Cir. 2004).  See also Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004) ("disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question") (internal quotations omitted).

The court has reviewed the non-discriminatory reasons that Gateway has offered for its selection of Landin over Johnson for the quality assurance department manager.  Although Johnson had more supervisory experience, Landin's engineering background would allow him to more easily and competently deal with third-party vendors.  Therefore, the court does not find that an inference of pretext arises from the comparison of qualifications.  See Chock, 113 F.3d at 864.

Johnson argues that the timing of her dismissal, shortly after she filed a complaint with the Human Resources department regarding her treatment, provides an "inference of unlawful discrimination."  The timing of Johnson's dismissal with respect to her harassment complaint is relevant for Johnson's retaliation claim because it tends to provide support that she was terminated as the result of her protected activity.  The timing of Johnson's dismissal, however, does not provide evidence that she was discriminated against because of her gender.

18

In the final step of the <u>McDonnell Douglas</u> burden-shifting analysis, Johnson has failed to show that Gateway's proffered business justification for its decision to terminate her and replace her with Landin is pretextual. Gateway's motion for summary judgment on Johnson's discrimination claim is therefore granted.

### 3.    Retaliation

Johnson also alleges that the decision to terminate her was made in retaliation for her filing a complaint of gender harassment.  The <u>McDonnell Douglas</u> burden-shifting analysis is also relevant in the context of a retaliation claim.  <u>Lewis v. St. Cloud State University</u>, 467 F.3d 1133, 1138 (8th Cir. 2006).  To prove her Title VII retaliation claim, Johnson must make a prima facie showing of the following elements:  (1) she engaged in protected conduct; (2) a reasonable employee would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct.  <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, ____ U.S. ____, 126 S. Ct. 2405, 2410-16, 165 L. Ed. 2d 345 (2006); <u>Carpenter v. Con-Way Cent. Express, Inc.</u>, ____ F.3d ____, 2007 WL 913661 at *5 (8th Cir. 2007).  For purposes of this summary judgment motion, Gateway concedes the first two elements, and argues only that there was no causal connection between Johnson's complaint and her dismissal.

19

In establishing her prima facie case, Johnson relies heavily on the close temporal proximity between the filing of her complaint and her dismissal from Gateway.  For purposes of this summary judgment motion, Gateway concedes that Johnson filed a complaint on February 6, 2003. Two weeks later, Johnson was ordered by Gateway corporate to report directly to Reznicek, one of the persons she named in her complaint, after approximately two years of reporting to Queresma.   Shortly thereafter, Reznicek reevaluated the qualifications needed to manage the quality assurance department.  After comparing the qualifications of Johnson and Landin, Reznicek asserts that he determined that Landin's engineering degree would allow him to better interface with third-party vendors, which were increasingly becoming the manufacturers of Gateway branded products.  Johnson was not offered another position at Gateway, and she was dismissed within less than two months of when she filed her complaint.

"An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events." Peterson v. Scott County, 406 F.3d 515, 524 (8th Cir. 2005).  But "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation."  Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc) (finding temporal proximity insufficient

20

to create a material issue of fact when "intervening unprotected conduct eroded any causal connection that was suggested by the temporal proximity of [the claimant's] protected conduct and his termination").

Temporal proximity can, in some cases, be sufficient to show a prima facie case under McDonnell Douglas.  See O'Bryan v. KTIV Television, 64 F.3d 1188, 1193-94 (8th Cir. 1995).  Here, the filing of Johnson's complaint was followed almost immediately by a change in her reporting structure, requiring her to report directly to Reznicek.  Shortly after, and within two months of when Johnson filed her complaint, Reznicek made the decision to dismiss Johnson from Gateway.  The temporal proximity between Johnson's complaint and the events which led to her release is sufficient to constitute a prima facie showing of retaliation.

The burden therefore shifts to Gateway to assert a legitimate business reason for its decisions.  In its brief in support of summary judgment, Gateway reasserts that Reznicek's decision to replace Johnson as the quality assurance department manager was a legitimate business decision, based upon what he foresaw as the future needs of the company.  This nondiscriminatory explanation is sufficient to shift the burden back to Johnson to show pretext.

As discussed above, the temporal relationship between Johnson's claim and her dismissal provides support to her claim that Gateway's

asserted business justification is simply pretextual.  "It is possible for strong evidence of a prima facie case to establish pretext as well."  <u>Smith v. Allen Health Sys., Inc.</u>, 302 F.3d 827, 834 (8th Cir. 2002).  In this case, a number of events occurred immediately after Johnson filed her complaint.  First, she was ordered to report to the person against whom she filed her complaint.  Second, Reznicek claims he made a determination to reevaluate the role of quality assurance manager, but Johnson alleges this is an after-the-fact justification created by Gateway.  Third, Reznicek replaced Johnson with Landin and terminated Johnson's employment entirely.  Although Gateway denies that Reznicek was aware that Johnson had named Reznicek in her complaint, Reznicek was aware that she had made a complaint about her treatment in the department.  D.R. Depo. at 243.

Reznicek testified that he was ordered to cut twelve persons from the quality assurance department, but the mandate did not indicate any specific cost savings that were to be achieved.  In formulating her advice on which staff to dismiss, which Reznicek asserts he took into consideration, Johnson selected employees first by performance (if they had a corrective action in the past 12 months) and second by seniority.  As a result, she recommended the dismissal of employees with performance problems and weekend and night employees.  Considering the fact that Gateway has never asserted that Johnson was anything but a capable employee, her dismissal

22

is not consistent with this pattern.  She was a relatively senior employee who had received favorable reviews as a manager.  The fact that she was dismissed outright, rather than allowed to use her Gateway experience in another position, provides further support for Johnson's assertion that she was dismissed because she filed a harassment complaint.  Considering the circumstances in which Johnson was released from Gateway, the court finds that Johnson has shown that there is a material issue of fact as to whether Gateway's business justifications for replacing her were simply a pretext for a retaliatory motive.  The court therefore denies Gateway's motion for summary judgment on Johnson's retaliation claim.

## II.   State Law Discrimination Claims

Johnson asserts claims for hostile work environment, gender discrimination, and retaliation against Gateway and Reznicek under SDCL 20-13-10, which states:

> It is an unfair or discriminatory practice for any person, because of race, color, creed, religion, sex, ancestry, disability, or national origin, to fail or refuse to hire, to discharge an employee, or to accord adverse or unequal treatment to any person or employee with respect to application, hiring, training, apprenticeship, tenure, promotion, upgrading, compensation, layoff, or any term or condition of employment.

The South Dakota Supreme Court, in interpreting SDCL 20-13-10, has noted that the statute is "comparable to the corresponding provision in Title VII" and has interpreted the statute in accordance with federal case law

construing Title VII.  Huck v. McCain Foods, 479 N.W.2d 167, 169 (S.D. 1991).  Because the court found that Johnson has not met her burden to proceed forward on her Title VII claims for hostile work environment and discrimination, the court finds that defendants are entitled to summary judgment on the corresponding state-law claims.  Thus, the only remaining state-law claim for the court to analyze is the state-law retaliation claim.

### A.    Individual Liability for Reznicek

Reznicek argues that the claim against him in his individual capacity under SDCL 20-13-10 should be dismissed for reasons similar to the claim against him under Title VII, namely that Reznicek is not an employer and therefore not liable under the act.  The South Dakota Supreme Court has not reached the issue of whether SDCL 20-13-10 gives rise to individual liability.  "When a state's highest court has not addressed the precise question of state law that is at issue, a federal court must decide 'what the highest state court would probably hold were it called upon to decide the issue.' "  Lenhardt, 55 F.3d at 379.  In Lenhardt, the Eighth Circuit held that the Missouri Human Rights Act (MHRA) did not create individual liability.  Similar to Title VII, the MHRA makes unlawful any employment practice wherein "an *employer*, because of race, color, religion, national origin, sex, ancestry, age or disability" acts in a discriminatory manner.  Mo. Rev. Stat. § 213.055 (emphasis added).  By contrast, the

24

South Dakota Human Rights Act does not prohibit the acts of an employer, but rather any person. SDCL 20-13-10 ("[i]t is an unfair or discriminatory practice for *any person* . . . .") (emphasis added).

The language of the South Dakota Human Rights Act is similar to that found in the Iowa Civil Rights Act (ICRA), which states, "[[i]t shall be an unfair or discriminatory practice for any: (a) *person* to [discriminate against] any applicant for employment or any employee because of age, race, creed, color, sex, national origin, religion or disability of such applicant." I.C. § 216.6(1) (emphasis added). In <u>Vivian v. Madison</u>, 601 N.W.2d 872 (Iowa 1999), the Iowa Supreme Court found that the language in the ICRA did subject a supervisory employee to individual liability. In reaching this conclusion, the Iowa Supreme Court noted that the use of both the word "employer" and "person" in the statute indicated that the legislature intended each word to have a different meaning, and that a contrary interpretation "would strip the word 'person' of any meaning and conflict with our maxim of statutory evaluation that laws are not to be construed in such a way as to render words superfluous." <u>Id.</u> at 878 (citing <u>Kungys v. United States</u>, 485 U.S. 759, 778, 108 S. Ct. 1537, 99 L. Ed. 2d 839 (1988)).

Although not controlling, the court finds that the well-reasoned opinion of <u>Vivian</u> provides support for Johnson's assertion that the South Dakota Supreme Court would interpret SDCL 20-13-10 to subject a

25

supervisor to individual liability.  The statute explicitly subjects any "person" to liability, not limiting its scope to an "employer" as in Title VII or the MHRA as discussed in <u>Lenhardt</u>.  Further, the statute contemplates a difference between the term "employer" and "person."  <u>See</u> SDCL 20-13-1 (defining each term individually).  The court finds that if faced with this issue, the South Dakota Supreme Court would likely find that SDCL 20-13-10 creates individual liability for a supervisor.  Gateway's motion for summary judgment on Johnson's claim against Reznicek in his individual capacity under SDCL 20-13-10 is therefore denied.

**B.    SDCL 20-13-10**

Defendants argue that summary judgment is appropriate on Johnson's state law retaliation claim because Johnson failed to obtain a determination of probable cause from the South Dakota Division of Human Rights and therefore failed to exhaust administrative remedies as required by state law.  Johnson asserts that she filed her complaint with the South Dakota Department of Labor, which in turn forwarded her complaint for investigation to the Equal Employment Opportunity Commission (EEOC).  Johnson argues that because she received a "Right to Sue" letter from the EEOC for her claims under Title VII, she has exhausted all state administrative remedies.

26

SDCL 20-13-29 states that "[a]ny person claiming to be aggrieved by a discriminatory or unfair practice may file with the South Dakota Division of Human Rights a verified, written charge." The South Dakota Supreme Court has interpreted SDCL 20-13-29 to require that any person who intends to file a state law discrimination claim must file such claim with the Division of Human Rights. Montgomery v. Big Thunder Gold Mine, Inc., 531 N.W.2d 577, 579 (8th Cir. 1995).

In Jansen v. Lemmon Federal Credit Union, 562 N.W.2d 122, 123-24 (S.D. 1997), the South Dakota Supreme Court summed up the administrative process for filing a state discrimination claim:

> SDCL 20-13-28 gives the Division the power to validate charges. If probable cause is found, the Division may begin conciliation efforts. SDCL 20-13-32. When this process becomes futile, the respondent is given notice to answer the charge. SDCL 20-13-34. Within twenty days of notice, however, the charging party may elect to sue for damages in circuit court. SDCL 20-13-35.1. Conversely, if no probable cause is found, the charge is dismissed, triggering an obligation to proceed with an administrative appeal, or the matter becomes final. SDCL 20-13-28.1.

In this case, Johnson received a written confirmation from the Division that it had received her claim and that it was being forwarded to the EEOC for investigation. Docket 47, Ex. 10 at 3. This procedure is authorized by the Administrative Rules of South Dakota, which state that "the division may utilize the services of federal . . . agencies which are

charged with the administration of comparable human relations laws or

ordinances." ARSD 20:03:03:01. Then, ARSD 20:03:04:01.01 provides:

> If a charge filed with the commission is also filed with the Equal
> Employment Opportunity Commission (EEOC), the investigating
> official shall enter an order dismissing the charge without any
> further investigation after receiving notice from the EEOC that
> it has issued a right to sue to the charging party. Notice may be
> in the form of a copy of the EEOC right to sue or other forms of
> EEOC notice which are verified with the charging party. The
> order must state the reason for the dismissal and must be
> served on the charging party and the respondent.

Thus, when the EEOC issues a "Right to Sue" letter, the investigator at the

Division is instructed to dismiss the charge, thereby obviating a charging

parties' obligation to go through the administrative process at the Division.

In this instance, Johnson received a "Right to Sue" letter from the EEOC

and therefore exhausted the pre-litigation remedies as required by SDCL 20-

13-10. Docket 47, Ex. 9. This court therefore has jurisdiction to adjudicate

Johnson's state-law retaliation claim.

　　　　As a result, summary judgment is granted in favor of defendants on

Johnson's claims for hostile work environment and discrimination, and

summary judgment is denied with regard to Johnson's retaliation claim.

**III.    Equal Pay Act**

　　　　Johnson alleges that she received substantially less compensation

than her male co-workers in violation of the Equal Pay Act, 29 U.S.C.

§ 206(d). To establish a violation of the Equal Pay Act, Johnson must show

that she received a lower wage than a member of the opposite gender who performed substantially equal work.  Simpson v. Merchants & Planters Bank, 441 F.3d 572, 577 (8th Cir. 2006).

Johnson argues that based upon her status as a "tier three" manager she should have been compensated in the same manner as the other "tier three" managers.  Johnson has identified five male employees who were tier three managers:  Jeff Dirkson, Kevin Erickson, Dave Jans, Dave Jones, and Chuck Limoges.  SUMF 20.  Johnson asserts three bases for her claim that she was compensated less than her male counterparts.  First, she states that when she received a raise, she was informed by Quaresma that she was "grossly under the minimum for a Manager 3."  P.J. Depo at 60.  Second, Johnson asserts that during her tenure as a Gateway employee, she was made privy to a document that included manager pay, which indicated Johnson received less compensation than similarly situated male Gateway employees.  When asked in her deposition about the circumstances of her viewing this document, the following dialog took place:

> [Counsel for Gateway] Q: [Other than the comment by Quaresma] do you have any reason to believe you were not being paid the same as or more than these other managers, Manager 3s?
>
> [Johnson] A: I saw a document at one point, and I don't recall the reason I saw it, and it had performance and pay on it.  I was quite surprised by it.  **However I can't state whether it was factual.**

. . .

Q:     How did it come about that you saw this document?

A:     Like I said, I don't recall the exact specifics.  I believe that
       Namoi Vandenbussche, [Resznicek's] assistant, shared it
       with me.

P.J. Depo at 61 (emphasis added).

Finally, Johnson relies on a document marked as Plaintiff's Exhibit 8 (Docket 47, Ex. 8).  It is not clear whether this document is the same document Johnson referenced in the deposition.  The document offered by Johnson purports to show her pay as equal to one of the other individuals who was a Manager 3, and between $4,750 and $16,750 less than the other four Manager 3s that Johnson has identified.  Johnson's exhibit does not indicate the relevant time frame for the employees' salaries.

In support of their motion for summary judgment, defendants rely on an affidavit of Jeremy DeLaughter, a human resource manager for Gateway. DeLaughter Affidavit, Docket 31, Ex. 11.  In an exhibit prepared by DeLaughter, during the years 2001, 2002, and 2003, Johnson received as much as $10,812 more in compensation than the nearest of the five persons she named.  Johnson never received less than any of the five persons whom she asserts performed similar work.

Both parties argue that the proffered documents are not dispositive. Johnson asserts that the exhibit prepared by DeLaughter is "conclusory in

nature, and does not offer any documentation in support of the conclusions it draws."  Docket 46 at 17.  Johnson also asserts that Gateway's failure to provide documentation, such as W-2 forms, renders DeLaughter's affidavit unreliable.  Gateway asserts that the evidence offered by Johnson in support of her claim is neither "credible" nor "admissible."  Docket 50 at 17.

Records that are not properly certified as required by Rule 56(e) cannot be considered by the court in determining whether summary judgment is appropriate.  Cummings v. Roberts, 628 F.2d 1065, 1068 (8th Cir. 1980).  Johnson has provided no foundation for the origin of the document she provided, and therefore there is no indication that it would be admissible evidence at trial.  The document therefore cannot be considered by the court in determining whether summary judgment on the Equal Pay Act is appropriate.

Further, the two other pieces of information offered by Johnson do not create a material issue of fact regarding her pay.  Quaresma's statement gives no indication that Johnson was being paid less than the similarly situated managers she identified.  Further, Johnson admits that she cannot state whether the document she saw previously "was factual or not."

By contrast, the affidavit produced by DeLaughter conforms with the requirements of Rule 56(e).  The affidavit by DeLaughter, and the exhibit he produced, shows that Johnson was receiving more pay than the group she

31

identified as peers while she was a quality assurance manager.  Based on the evidence, there is no material factual issue in dispute.  Gateway's motion for summary judgment is therefore granted on Johnson's claim under the Equal Pay Act.

**IV.   Intentional Infliction of Emotional Distress**

Johnson asserts a claim of Intentional Infliction of Emotional Distress (IIED) against Gateway and Reznicek.  In order to establish a claim for IIED, Johnson must show: (1) an act by defendant amounting to extreme and outrageous conduct, (2) intent (or recklessness) on the part of the defendant to cause plaintiff severe emotional distress, (3) the defendant's conduct was the cause-in-fact of plaintiff's distress; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct.  Reeves v. Reiman, 523 N.W.2d 78, 83 (S.D. 1994).  In order for conduct to be considered "outrageous," "it must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Richardson v. East River Elec. Power Co-op., Inc., 531 N.W.2d 23, 27 (S.D. 1995).

Johnson asserts that "her anxiety about job retaliation grew as events developed."  Docket 46 at 19.  She asserts that her termination evidenced cruel, extreme, and outrageous behavior and that she was severely depressed following her dismissal from Gateway.  Assuming the conduct

32

alleged by Johnson to be true, the court does not find it rises to a level as to be "so extreme as to go beyond all possible bounds of decency" as a matter of law.  Further, Johnson acknowledges that she has no complaints regarding the manner in which she was terminated by Gateway.  SUMF 30.  Accordingly, the court does not find that Johnson has shown that there is a material issue of fact regarding her claim for IIED, and Gateway's motion for summary judgment on that claim is granted.

**V.      Breach of Contract**

In Johnson's complaint, she alleges that Gateway's online policies and procedures guide, which contained policies against discrimination, created an employment contract and that the contract was breached when she was allegedly dismissed in retaliation for her discrimination complaint.  Gateway argues that Johnson's employment at Gateway was "at-will" and therefore no breach of contract claim lies.

The court notes that Johnson did not respond to statements of undisputed material fact 22 through 26,[2] as they relate to her status as an at-will employee.  The court therefore deems these statements admitted.  Even if Johnson had responded to those statements, however, there is still

---

[2]In their reply brief, defendants correctly note that Johnson's responses to SUMF 22-26 appear to actually correspond to 27-31.  Even after Gateway put Johnson on notice of the error, Johnson has not responded to the substance of SUMF 22-26.

sufficient evidence in the record to show that there is no material issue of fact as to Johnson's status as an at-will employee.

In her deposition, Johnson admitted she did not have a written contract of employment, that Gateway was an at-will employer, and that South Dakota is an employment at-will state.  P.J. Depo 168-69.  She further acknowledged that immediately above her signature on her application for a position at Gateway, it states that her employment is "at-will."  P.J. Depo at 168-69, Johnson App. for Employment, Docket 31, Att. 14.  The online policy guide upon which Johnson asserts an implied contract exists explicitly states that "The Guide does not form an express or implied contract of employment between the Company and its employees." Docket 31, Att. 12 at 1.

The South Dakota Supreme Court has held that in order for an employer to surrender its statutory power to hire and fire at will, "the employer must affirmatively indicate its intent by adopting a personnel policy or manual explicitly providing that a for-cause termination procedure must be followed."  Holland v. FEM Elec. Ass'n, Inc., 637 N.W.2d 717, 720 (S.D. 2001).  The language in the online policy does not explicitly surrender Gateway's status as an at-will employer, but rather explicitly states that it does not modify the status.

34

Johnson's argument that there is a question of fact regarding an "implied contract" is without merit.  The case cited for the proposition that "[t]he existence and governing terms of any implied contract present questions of fact to be decided by a jury," Setliff v. Atkins, 616 N.W.2d 878, 892 (S.D. 2000), is a case that deals with the terms of a contract after a definite contract had expired.  See also Jurrens v. Lorenz Mfg. Co., 578 N.W.2d 151, 153 (S.D. 1998) ("If a valid express contract exists, no implied contract need be inferred.").  Setliff is not relevant to determine whether or not Gateway has given up its status as an at-will employer.  Johnson essentially argues that any company that enumerates a harassment policy gives up its status as an at-will employer.  This argument is not supported by the authority cited by Johnson and contravenes the South Dakota Supreme Court's holding in Holland.

There is no issue of material disputed fact regarding Johnson's status as an at-will employee at Gateway.  South Dakota law is clear that the online policy manual does not change this status.  As an at-will employee, Johnson had no contractual right to continued employment.  SDCL 60-4-4.  Therefore, Gateway's motion for summary judgment on the breach of contract claim is granted.  Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment (Docket 29) is granted in part and denied in part as set forth in this order.

35

IT IS FURTHER ORDERED that the remaining state-law retaliation claim against Gateway and Reznicek and the federal retaliation claim against Gateway shall be scheduled for trial by separate order.

Dated April 24, 2007.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
CHIEF JUDGE

36